The next case is Bisram v. United States. Good morning, your honors. My name is Charles Ross, and along with Timothy Quill and Anne-Marie McAvoy, we represent Marcus Bisram. It's an honor to be here before you all. Probable cause does not exist to extradite Marcus Bisram. He's an American citizen against whom there is absolutely no reliable evidence to support a finding of probable cause that he ordered the death of Fayez Narindat. The only evidence that he was part of the death are the testimonies and statement of Chaman Chunalau, an illiterate, uneducated, at the time 16-year-old witness, who even the government calls a confused teenager. Chunalau testified in both court proceedings in Guyana in July of 2017 and April of 2018 that he knows nothing about the Narindat death. Under oath, he said he never made the statement attributed to him by the Guyanese police. He also adopted- Was it a police witness submitting an affidavit saying to the contrary that he did make the November statement? Yes, your honor. I think the affidavit came from a corporal Laundrie. Laundrie was not present when that statement was supposedly taken. Within that affidavit was a statement from Inspector Singh, I think a police officer, who attests that he was present when the statement was made, that he read the statement, read the statement out loud to Mr. Chunalau, and that the mother then put her name on it. We would have to find not just that the witness was inherently unreliable, we'd have to find, the lower court would have to find that police officer Singh was unreliable, right? No, your honor. I disagree with that. I do not think that you have to find that a police officer was lying in this case to find that the only witness- If your claim is that the witness says, I never made that statement, and there's something, a sworn statement in the record where a police officer says, he made the statement, I read it out loud to him before he signed it, why we wouldn't have to be making a credibility determination? It's not a credibility determination, your honor. It's the underlying unreliability of the fact that Mr. Chunalau radically contradicts himself throughout the proceedings here. On the one hand, there's the statement, but on the other hand, there are disavowals, and he is just an unreliable person. We're not here to convince your honors that any one version of these radically- Is your position then, if someone contradicts themselves, they're inherently unreliable then? If they, and also in the later statement, although on cross, he appears to withdraw the statement, before that, he made a lot of the same statements about the details of the crime. So even his deposition had details of the crime, right? Well, but judge, the record is replete with radical contradictions, and he's also an inherently- I gave you two questions at once. My first question was, it is your position that if someone makes contradictory statements that they're inherently unliable for purposes of extradition or other purposes? Not on its own. There are many, many other indicia of unreliability on the part of this witness. For example, in the testimony that you're talking about, your honor, he doesn't even know his birth date. He doesn't know his year of birth. He doesn't know his date of birth. There are all kinds of problems with the underlying reliability of this witness. Now- But looking at the record, the extradition packet as a whole, you have a witness who may have made contradictory statements, did make some contradictory statements over the record. The first statement, an officer and his mother were present, there's evidence that that statement was made, clearly inculpates your client. But there are other people who attested to an argument between the victim and your client, to a beating administered by your client's bodyguard and others, and to the placement of the victim's body in a car. That's part of the packet, or am I misunderstanding something? Judge, there may be evidence in this record that the death occurred by beating, but the only evidence that connects Marcus Bisram to this death in any way is Chaman Chunowel. That's it. There's also, on page 282 of the supplemental appendix, Deodog Doth, I guess his nickname is Brunkland, who said your client was arguing with the victim, that it was a slap, and then he asked the bodyguard to take some action with respect to the victim. Judge, I would suggest that your Honor, take a second look. I read it. Your Honor, I understand. What am I missing? What am I missing? I get it. What you're missing, Judge, is that Mr. Bruckhand did not see a slap. That is not in the record. An argument, and then a direction to the bodyguard to do something, right? Well, the fact of the matter is that Fayez Narindat was drunk. He was threatening to kill himself. He was just a bad guest at this party, and the fact that Mr. Bisram may have spoken to Mr. Bruckhand and said, get him off the yard, that's only natural. He's the host of the party, and this man is acting crazily, and he's not a good guest here. I would presume that the bodyguard decided to kill him on his own, that even though he was just told to get him off the property, the bodyguard decided on his own, no, I'm not just going to get him off the property. I'm going to kill him. What we're talking about, probable cause and an extraditionary, those are trial-type issues, right? It's not an issue of probable cause. If there's an argument and a direction to do something and then a killing, why isn't there a probable cause to believe that there was a direction to kill? Judge, there simply is not. The only, the only, absolutely only evidence is Chum and Chunalau about a direction to kill. That's it. Bruckhand does not give us that. He simply does not. There was another witness who said to put him out the yard. Yes, and that's what I'm saying, Judge. You're saying that means escort him from the premises. Put him out the yard, yes. It could have a lot of other meanings. Well, but, but Judge, it certainly does not necessarily mean, and it's certainly not probable cause, but, but a person of reasonable inference that that is telling, I mean, he, he didn't, he didn't ask, you know, the maitre d' to put him out. He asked his henchman to put him out and, and there's a lot of room for assuming that, that, that meant using violence and that the violence resulted in his death. Judge, I would suggest that that is not an inference that's really available here to conclude that put him out the yard means kill him. I just don't think that's an appropriate inference. I simply don't, and, and there are, there are other reasons to find that this particular witness is simply not, not reliable. As I said, he's uneducated. He's illiterate. He was 16 at the time. He's a confused teenager. All teenagers are confused. That may be, Judge, but this is the only evidence, a confused teenager is the only evidence whatsoever that Marcus Bisram was connected to this death. It's, it, it simply has no other the, the package has no other evidence that connects him. He, he certainly testifies that, that the evidence that the statement was one that he did not make. He also adopts that statement. And it's this radical flip-flopping. We're not trying to convince the court that any one given piece of testimony is the, is, is the truth. It's the radical flip-flopping and changing that we suggest does not provide probable cause here. The argument is essentially that there's sufficient flip-flopping that we just have to put that witness's testimony entirely aside. It's not helpful. And then what we're left with is not sufficient alone to establish probable cause. Yes, Your Honor. That's right. That's my argument. Now, the government may point to Corporal Landry's affidavit. They may point to the other affidavit that Judge Bianco made a reference to. And again, that simply does not matter. It's the radical contradictions that are a problem here. The government cites two other witnesses, a Chris Bowlers and a Zabir Ali as additional witnesses that can support probable cause here, but they don't see anything related to Mr. Bisram. They do not connect Mr. Bisram in any way, shape, or form to the, to the death. And as I said, Nareen Dat was by all accounts drunk and yelling and threatening to kill himself. So he simply was somebody that it makes sense to ask to be put out of the yard. So, just to finish up, Chenoweth is the only evidence here. He's the only person, the only piece of evidence that connects Marcus Bisram directly to the death of Fayez Nareen Dat in any sort of criminally culpable way. It's just simply a question of basic and fundamental unreliability. Thank you, Your Honors. May it please the Court. Good morning, Your Honors. Nicholas Moskow for the United States and Warden Quay. The appellant got up and made a strong statement that there's no probable cause in this case. The government disagrees, but also notes that's not the appropriate standard to apply. This is an extradition matter, and in an extradition proceeding, the appropriate standard is probable cause. On habeas review of extradition decisions, the appropriate standard is whether there was any evidence warranting the finding that there was reasonable cause to believe the accused guilty. Here there was ample evidence for the reasons that the Court was describing. Notably, Judge Quay was presented with an eyewitness affidavit describing the fight between Mr. Bisram and the victim, describing the origin of the fight, both describing the urinate, Mr. Bisram's grabbing the victim in a manner that the victim did not appreciate and responded to by slapping Mr. Bisram. It then describes Mr. Bisram giving the order to a number of men, including his bodyguard, to kill the victim. It describes the beating, and it describes how the five men beat the victim to death with paling staves while the victim lay there not responding. That statement is corroborated by not only Corporal Laundrie's affidavit, not only the statement of Officer Singh, but also three other eyewitnesses. Bruckhand, who is also known as Dat, the witness referenced by Judge Bianco, who was involved in the fight, corroborated that the victim was drunk at page 282 of what was actually the joint appendix rather than the supplemental appendix, corroborated that the victim argued with Bisram, and corroborated that Bisram asked his bodyguard to handle the victim, to put him out of the yard. Is there any evidence that the phrase, put him out of the yard, means anything in local parlance other than escort him from the premises? There's no evidence as to what it means, Your Honor, and there is evidence that Rasta Man, the man to whom the instruction was given, was Mr. Bisram's bodyguard, that what happened subsequently, as described by all three witnesses, was a brutal beating. And the inference is that what he told his subordinates is what his subordinates did? That's the inference, Your Honor, and that inference is both from what Chunilal describes that he told his subordinate, which is kill him, and then what Dat describes, he told his subordinate a little bit earlier, which is put him out of the yard. That took place, there was then some time that lapsed before the beating. The beating is described in similar terms by all witnesses. The beating was obviously brutal, it involved the victim falling into the drain, being pulled out, and then the use of the paling staves. It involves the victim saying, ooh boy, which is corroborated by a number of the witnesses. The witnesses' overlap in their descriptions is not complete, but it's sufficient to provide corroboration. And there was no evidence before Judge Kuo that any of the witnesses had at any point given a statement that was in any manner inconsistent with what they said here. In fact, that evidence was not produced until a reply brief to the extradition court. Judge Matsumoto, when presented with that evidence for the first time, noted that there was no authority provided to her. Is that the April 6th transcript? The April 6th, 2018 transcript, Your Honor, as well as the November, or the July 27th, 2017 transcript. Everything in the joint appendix after page, I believe it's 436 or so, was not provided to the extradition court. Is there ground for believing that it was available? There is, Your Honor. There is, Your Honor. Specifically, counsel stated at the extradition proceeding repeatedly that he had it, that's at page 380 and 88, specifically with regards to Chenelal's alleged recantation, he stated, I have the transcripts, or we've got the transcripts to prove it. That's at page 388, which reflects the extradition proceeding before Judge Kuo. So while some of the materials, the materials post-dating that hearing clearly were not available to counsel, the materials that are substantially identical were available, and the strategic decision not to introduce them was made in part because the defense tactic has been to delay. There's been an ongoing campaign of witness intimidation. There's a record of that in the transcript. And witnesses do lose memory over time. In this case, there is evidence that Mr. Bisram committed a murder in Guyana. He does not want to face the murder charges, and he has made the concerted effort to delay his extradition. That strategy has a number of, has involved a number of letters and requests to the court. At joint appendix 324, he sought to delay his briefing. At 377, he sought to delay the hearing. At 381 to 86, he sought an adjournment because of an alleged pending motion to dismiss. At 394 to 427, he sought to throw the whole thing off because of an alleged dismissal in Guyana. At page 432, he sought to delay decision until the Guyanese court ruled on a motion. And then in the habeas court at 533, he sought to delay. At 535, he introduced new arguments on reply and invited a surreply. Why not drag this out? At page 672, he sought a factual hearing in the habeas court, avoiding having the determination made based on what was already at that time a voluminous record. And then on appeal, he sought to tie his brief's due date to the receipt of a transcript, which had been ready for a year. That's at docket entry 21. This has been a case in which the murder happened in October of 2016 or early November of 2016. The extradition proceeding has been pending for two years. What's your response to the core argument, as Judge Livingston identified with Mr. Ross, that the contradictions are so radical, as Mr. Ross used the term, that it's inherently unreliable that that witness has to be cast aside? What's your response to that? This is not a case in which there are radical contradictions. This is a case in which Chenelal described the beating, and then that's the only evidence that was before Judge Kuo. Were the court to say evidence that ... Let's assume all the evidence together now. I understand there was a delay, but let's just assume, looking at all the evidence, what's your response? So his first statement described the beating in some detail. His second statement, which is at government appendix three through seven, described the murder again in some detail. His third, which was six days later, first reaffirmed that the statements made to Corporal Laundrie and Officer Singh were the statements that he had made, and then is followed by confused testimony in which he, in response to leading questions, does say that he did not make that statement, and then responded no to, do you understand what I'm asking you? I would also posit that his response, not knowing his birthday, things like that, are not suggestive of his being an unreliable witness, but are rather suggestive of his not understanding the nature of the proceedings and what was being asked of him at those proceedings. That assumption is further supported because in April of 2018, at pages 640 to 641 in the transcript, he first describes how he saw everything, the whole murder again. He doesn't describe Bisram's specifically ordering the men to kill him. He describes Bisram talking to the men immediately prior to their killing the victim, and then at pages 648 to 664, he provides confused testimony, appearing to recount again in response to leading questions, and then he ends with, I don't have a reason when asked why his testimony from the morning is different from his testimony in the afternoon. It's not a case in which it's clear what Mr. Chenelal thinks and that what he thinks is different from what he told the police. That case does exist. Those cases have been decided. This is not one of those cases. His alleged recantation is simply providing the defense attorney with the answers the defense attorney sought to elicit in handwritten transcripts that are typed up from Guyanese proceedings in response to leading questions. And Chenelal is not somebody who is so unreliable as to not be the basis for a magistrate judge's reasonable position that there was probable cause. Again, the question before this court is whether there was sufficient evidence for Judge Quote to make the determination that there was probable cause. And should this court find that there was, should they find that his custody is not in violation of the Constitution or laws of the United States, that does not mean that Bisram is guilty. That means that Bisram is someone who may be prosecuted in Guyana for the crime with which he is charged there. That determination, whether or not he will be prosecuted in Guyana, is a determination that will be left to the executive branch of the United States and to the government of Guyana. So this court need not decide whether Bisram is guilty or whether Bisram should be charged, even whether Bisram should be extradited. Simply that his custody, the Judge Quote's decision to find him extraditable, was not a violation of the Constitution or laws of the United States. Are there any further questions from the court? Seeing none, the government will rest on its submission. Your Honor, the government attempts to sidestep the standard here by citing language in cases that suggest that some evidence or any evidence of probable cause is sufficient. However, you have to make a finding of probable cause here. And again, this witness is simply unreliable. The government tries to argue . . . Do you think we have to make a determination of probable cause? Yes, Your Honor. I do believe that . . . You can't convert this into a de novo review of the evidence. But, Your Honor . . . There is not even an appeal permitted from the extradition. The only question is whether your client is being held, as your adversary points out, in violation of the Constitution while he is awaiting extradition to Guyana. Yes, Your Honor. And the standard for that process of being held is whether or not there is probable cause to believe that he's the one that committed this crime. And as I've argued, there simply is not. Is that determined by the extradition? But, Your Honor, this Court reviews legal determinations in an extradition de novo. It's not a . . . The facts are clear error. The actual legalities . . . And I'd suggest, Your Honor, that probable cause is a law. That's a determination that is a legal finding. And that, Your Honor, you and this Court review by de novo status. And we're not disputing that there was a beating here. We're simply not disputing that. What we're saying is that these radical flip-flops make this a situation where probable cause is simply unreliable. The government makes much of delay and seems to suggest to this Court that my client's utilization of procedures that are available to him is somehow an indicia of his guilt and somehow an indicia of probable cause. And it simply isn't. A lawyer is seeking delay as this happens every day. Yes. Indeed, that is true. And so, at bottom, Judge, Your Honors, that these flip-flops are radical changes. They are radical changes. The fact of the matter is that he, on one hand, will adopt the statement on direct, and on another hand, he'll say he knew nothing about the death of Fayez Narendat. It's not that. The government argues that he doesn't understand. He doesn't understand the proceedings. If he doesn't understand what's going on, how can this Court make a finding that there is probable cause to continue holding Marcus Bisram? I urge this Court to find that there is not probable cause and to deny the United States request that his incarceration remain. If Your Honors have no further questions, I'm finished for the morning. Thank you very much. Thank you both. And we will take the matter under advisement.